Argued December 9, 1971, affirmed April 4, 1972

NEPTUNE MICROFLOC, INCORPORATED,
*Appellant, v.* FIRST FLORIDA UTILITIES,
INC., *Respondent.*

495 P2d 263

*Peter L. Barnhisel,* Corvallis, argued the cause for appellant. On the briefs were Fenner & Barnhisel, Corvallis.

*J. Alfred Joiner,* Corvallis, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

DENECKE, J.

The sole issue is the "reach" of the Oregon long-arm statute. ORS 14.035(1)(a).

The plaintiff Oregon corporation commenced an action in Oregon for the price of goods sold the defendant Florida corporation. Personal service was made on the defendant in Florida. The trial court granted the defendant's motion to quash, and plaintiff appeals.

All the evidence is contained in affidavits and the complaint. The plaintiff designs, manufactures and sells sewage treatment systems and components of such systems. The design and manufacture are done in Oregon. The only evidence about the defendant's business activities is that it does business in three counties in Florida and operates a sewage treatment plant in one of these counties. No representative of the defendant has been in Oregon in connection with the transaction. The goods sold were sewer treatment settling tubes, consisting of a "honeycomb" configuration of plastic tubing. The tubes are now in Florida and the defendant's defense to the claim for the purchase price is that the tubes are not performing as warranted.

The contract is evidenced by plaintiff's order form which states it was presented by George H. Dacy, Neptune Meter Co., Miami, Florida. This order form was accepted by the defendant in Florida and subsequently signed by the plaintiff in Oregon. The contract is also evidenced by the defendant's purchase order which it mailed to Oregon, where it was accepted by plaintiff.

The tubes were not fabricated until after the

contract was made, but the record does not indicate they were custom-made to fill defendant's order.

Plaintiff contends our recent decisions in *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), and *Myers v. Brickwedel,* 259 Or 457, 486 P2d 1286 (1971), logically lead to the conclusion that Oregon can obtain jurisdiction.

*Myers v. Brickwedel,* supra, decided Oregon had jurisdiction because the action arose from "[t]he commission of a tortious act within this state." ORS 14.035 (1)(b). The problem in the instant case is, does the cause of action alleged by plaintiff arise out of "[t]he transaction of any business within this state"? ORS 14.035(1)(a).

*State ex rel White Lbr. v. Sulmonetti,* supra (252 Or 121), was decided upon the basis of this latter quoted section. The facts in that case were that White, the defendant in the contract action, was a Florida lumber and plywood wholesaler. Continental, the plaintiff in the contract action, was an Oregon corporation in the same business. The parties had done business previously. The Florida defendant asked Continental for a quotation on some plywood, which was given. The Florida corporation accepted the quotation and thereby formed the contract. Pursuant thereto the Oregon corporation instructed an Oregon mill to fill the order. Some of the plywood was shipped to Florida. The Florida corporation claimed the plywood was unsuitable and refused to pay. The Oregon corporation instituted an action in Oregon for the purchase price and for damages for plywood manufactured and not shipped. We held the Florida corporation transacted business in Oregon and thus was amenable to service.

Both the majority and the concurring opinion accepted "fairness" as the test. Is it "fair" to require

the foreign corporation to litigate the issue in Oregon? A standard so nebulous as "fairness" obviously is of little or no assistance in predicting how the close cases will be decided until enough cases have been decided to outline the perimeter of "fairness." Nevertheless, no acceptable substitute standard has been found.

The majority in the *White* case found that it was "fair" to subject the defendant to jurisdiction because the defendant had sufficient "contacts" with Oregon.

Mr. Justice HOLMAN, concurring in the *White* case, opined that it was "fair" because White Lumber regularly engaged in interstate business. He reasoned that White Lumber apparently found it convenient to do business in Oregon; therefore, it could not be too inconvenient for White Lumber to litigate in Oregon. This is somewhat a part of the analysis proposed by von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv L Rev 1121, 1167-1179 (1966).

In the instant case we do not need to choose between these two bases for the *White* decision because under either Oregon should not exercise jurisdiction over the defendant in this case. The defendant did not have sufficient contacts with Oregon and it is not a concern that does interstate business.

As far as contacts, the record indicates that the plaintiff initiated the transaction in Florida through its representative, George H. Dacy. In the *White Lumber* case, White instituted the transaction in Oregon by requesting a quotation on plywood. In the present case, the goods were not specially manufactured to fill defendant's order, while in the *White* case, the majority stated that this was the fact. Dean

Scoles believes that latter fact would be particularly significant. Eugene F. Scoles, *Oregon Conflicts: Three Cases,* 49 Or L Rev 273, 277 (1970). As far as the nature of the defendant's business, White Lumber's business was necessarily conducted in interstate commerce, including previous business in Oregon. On the other hand, First Florida Utilities previously had no business with Oregon concerns and as the operator of a sewage treatment plant was not apt to do any substantial business with concerns in other states.

We have stated, "Courts are instruments of state policy." *Lilienthal v. Kaufman,* 239 Or 1, 16, 395 P2d 543 (1964). Superficially, it would appear that we would best advance state policy by permitting Oregonians to bring foreign corporations to task before the Oregon courts. This is not necessarily true. Oregonians might be sued in foreign states with jurisdictional facts like those present here. Such Oregon defendants might permit default judgments to be taken against them. If the foreign plaintiff sued on such judgment in Oregon we would have to honor that judgment if we established that under such circumstances an Oregonian could successfully obtain jurisdiction in Oregon over a foreign defendant.

We conclude that the defendant did not transact business in Oregon and, therefore, is not subject to jurisdiction in Oregon.

Affirmed.

O'CONNELL, C. J., specially concurring.

I concur in the result. See my dissenting opinion in *State ex rel White Lumber Sales, Inc. v. Sulmonetti,* 252 Or 121, 128, 448 P2d 571 (1968).