MONEY-LINE, INC., Respondent, v RONALD CUNNINGHAM et al., Appellants.

Fourth Department, April 3, 1981

#### APPEARANCES OF COUNSEL

*Thomas H. McKelvey* for appellants.

*Spoto, Spoto, Donovan & Slater (Walter M. Donovan* of counsel), for respondent.

#### OPINION OF THE COURT

HANCOCK, JR., J.

In *Gladding Corp. v Balco-Pedrick Parts Corp.* (76 AD2d 1) we held that defendant's act in placing an order in New York for goods to be shipped from Florida did not, under the circumstances, amount to sufficient Florida contacts to subject it to in personam jurisdiction in that State (see *Hanson v Denckla*, 357 US 235; *International Shoe Co. v Washington*, 326 US 310). In certain respects it may be argued that defendants here in making a contract in New York for services to be performed in Ohio have done more

to support jurisdiction over their persons in Ohio. Nevertheless, we conclude that the contacts are not sufficient and that the default judgment obtained against defendants in Ohio should not be accorded full faith and credit.

Defendants Ronald and Martha Cunningham, interested in refinancing their farm in Sherman, New York, placed a call to plaintiff, Money-Line, Inc., in Mansfield, Ohio in response to an advertisement placed in a national farmer's magazine by Money-Line. Edward Fraley, president of plaintiff, traveled to Sherman where the parties executed a contract in which plaintiff agreed to obtain a loan for the defendants in return for payment of 4% of the loan amount. Subsequently, defendants mailed financial statements and soil maps to plaintiff in Ohio and telephoned plaintiff several times to ascertain whether it had obtained financing.

Approximately two years later defendants obtained a $150,000 loan from Equitable Life Assurance Society of the United States. Plaintiff, claiming entitlement to 4% of that amount, commenced an action in Ohio pursuant to the Ohio long-arm statute, rule 4.3 (subd [A], par [1]) of the Ohio Rules of Civil Procedure.* Upon advice of counsel that the Ohio court lacked jurisdiction, defendants failed to appear. The Ohio court, finding that it had jurisdiction because defendants had "transacted business" in Ohio, entered a default judgment for $6,400 plus costs. When plaintiff sued in New York to enforce the judgment, Special Term granted its motion for summary judgment. We reverse.

Subdivision (A) of rule 4.3 of the Ohio Rules of Civil Procedure has been held to extend the long-arm jurisdiction

---

\* Rule 4.3 of the Ohio Rules of Civil Procedure provides in relevant part as follows:

"(A) *When service permitted.* Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a nonresident of this state * * * The term 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state".

of the Ohio courts to the limits of due process *(Schatel v Weitz,* 40 Ohio App 2d 95; *In-Flight Devices Corp. v Van Dusen Air,* 466 F2d 220; *Garrett v Ruth Originals Corp.,* 456 F Supp 376).* Thus, the sole issue is whether subjecting the defendants to in personam jurisdiction comports with due process. We hold that it does not.

Jurisdiction will be upheld where a defendant has established "certain minimum contacts" with the forum so that the maintenance of the suit would not offend " 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington, supra,* p 316) and has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" *(Hanson v Denckla, supra,* p 253). In applying these general principles to the case at hand, we adopt the three-step analysis formulated by the Sixth Circuit of the United States Court of Appeals: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *(Southern Mach. Co. v Mohasco Inds.,* 401 F2d 374, 381, quoted in *Elliot Co. v Caribbean Utilities Co.,* 513 F2d 1176, 1181, and *In-Flight Devices Corp. v Van Dusen Air, supra,* p 226.)

We conclude that the circumstances here do not meet the first step of this test, viz., that "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state". The only such "purposeful" activities in Ohio attributable to defendants—the telephone call to Ohio in response to an advertisement in a magazine and the services to be performed by plaintiff at least in part in Ohio pursuant to the contract which defendants signed in New York—are barely more extensive than those of the defendant in *Gladding Corp. v Balco-Pedrick Parts Corp.* (76 AD2d 1, *supra).* In *Gladding,* the defendant, a New York corpora-

tion, purchased goods at the solicition of plaintiff's agent in New York from plaintiff's Florida division. Noting that "[a]fter placing the order in New York, defendant's sole relationship to the transaction was to sit back and await delivery of the shipment", this court held that "it may not be said that defendant purposefully availed itself of the privilege of conducting activities within Florida, thus invoking the benefits and protection of its laws" (*Gladding Corp. v Balco-Pedrick Parts Corp.*, supra, pp 5-6). That defendants here subsequently sent information to Ohio and telephoned to ascertain the progress plaintiff was making does not transform their role into that of a "purchaser who aggressively solicits a business transaction and participates in some way" in the plaintiff's performance (*Gladding Corp. v Balco-Pedrick Parts Corp.*, supra, p 5).

While it is true that some decisions hold that the making of a contract by a defendant calling for performance in the forum State is, without more, a purposeful activity sufficient to confer jurisdiction (see *In-Flight Devices Corp. v Van Dusen Air*, supra; *Southern Mach. Co. v Mohasco Inds.*, supra; *W. A. Kraft Corp. v Terrace on the Park*, 337 F Supp 206; *Simpson Timber Co. v Great Salt Lake Mins. & Chems. Corp.*, 296 F Supp 243), these cases usually involve manufacturing contracts which have " 'a realistic impact on the commerce of that state' " (*In-Flight Devices Corp. v Van Dusen Air*, supra, p 226). For example, *In-Flight Devices* involved the purchase of over $200,000 worth of manufactured goods and *Southern Mach.* involved a long-term licensing agreement whereby the defendant derived profits from the plaintiff's activities in the forum State. In contrast, nothing in the case at bar suggests that the services to be performed by plaintiff under the contract would have such an impact. A single performance was contemplated by the parties, the fee involved was not large ($6,000), and plaintiff may well have sought and obtained the loan in a State other than Ohio. (Indeed, the loan which defendants ultimately obtained and for which plaintiff claims a fee was from Equitable Life Assurance Society of the United States through Equitable's representative in Pennsylvania.)

Nor has plaintiff satisfied the third requirement that "the

acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable" *(In-Flight Devices Corp. v Van Dusen Air,* 446 F2d 220, 226, *supra,* quoting *Southern Mach. Co. v Mohasco Inds., supra,* p 381). In cases where a defendant is a customer for a single purchase, as contrasted with cases involving long-term manufacturing contracts or more extensive contacts with the forum, the general rule is that the placing of an order by a defendant is not a sufficient connection with the forum to sustain jurisdiction (see *McQuay, Inc. v Samuel Schlosberg, Inc.,* 321 F Supp 902; *Geneva Inds. v Copeland Constr. Corp.,* 312 F Supp 186; see, also, discussion in *In-Flight Devices Corp. v Van Dusen Air, supra,* p 232).

In determining whether the defendant's connection with the forum is sufficient to support jurisdiction, courts have assessed the magnitude of the forum State's interest in the litigation. While certainly a State has some interest in aiding its residents in securing the benefits of their contracts, the degree of such interest necessarily depends on various factors including the size of the contract and the extent, nature and length of the activities to be performed in the forum State (see *In-Flight Devices Corp. v Van Dusen Air, supra,* p 232; cf. *Whittaker Corp. v United Aircraft Corp.,* 482 F2d 1079; *Garrett v Ruth Originals Corp.,* 456 F Supp 376, 383, *supra).* Where, as here, the contract is a consumer-type agreement involving a comparatively small transaction and a single rather limited performance, the State's interest would be minimal. Moreover, with concerns like plaintiff which solicit business from individuals in several States, the forum's interest in the dispute would be counterbalanced by its interest in "not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts" *(Whittaker Corp. v United Aircraft Corp., supra,* p 1085).

Another consideration in assessing the reasonableness of the exercise of the forum State's jurisdiction is the extent to which the foreign consumer aggressively sought the contract. Where the nonresident defendant, like the purchaser from a "mail order house", is truly the passive party,

courts have ordinarily refused to recognize jurisdiction (see *Whittaker Corp. v United Aircraft Corp., supra,* pp 1084-1085; *In-Flight Devices Corp. v Van Dusen Air, supra,* pp 232-233; *Oswalt Inds. v Gilmore,* 297 F Supp 307, 312-313; *Gladding Corp. v Balco-Pedrick Parts Corp.,* 76 AD2d 1, *supra).* Here, the initial contact between the parties was made through an advertisement run by plaintiff in a farm magazine and intended to be read by defendant in New York. Defendants' activities consisted of nothing more than responding to the advertisement, sending requested materials and inquiring to see if anything had been accomplished. There is no practical distinction between this and "the 'mail order' situation where the assertion of jurisdiction would, by apparently unanimous consent, be inappropriate" *(In-Flight Devices Corp. v Van Dusen Air, supra,* p 232). Certainly defendants were not active and participating purchasers who "vigorously negotiate[d], perhaps dictate[d] contract terms, [and] inspect[ed] production facilities" *(In-Flight Devices Corp. v Van Dusen Air, supra,* p 233), and who therefore may fairly be subject to jurisdiction (compare *Whittaker Corp. v United Aircraft Corp., supra,* in which defendant United Aircraft Corp., *inter alia,* supplied design specifications and work statements which governed plaintiff's performance).

Other factors support the conclusion that subjecting defendants to jurisdiction in Ohio would be unreasonable under the third step of the Sixth Circuit test and would offend the "fair play and substantial justice" standard of *International Shoe.* Defendants are individual consumers with no known prior dealings in the forum who made an isolated out-of-State purchase of services. The contract was made in New York. Defendants never went to Ohio in connection with the contract and had their only personal dealings with plaintiff through its agent in New York. While physical presence in the forum is not determinative, it is relevant as providing "a clue to the significance attached by the defendant[s] to the activities occurring within the forum state—and thus a clue as to [their] expectations" *(In-Flight Devices Corp. v Van Dusen Air, supra,* p 235). Under the circumstances, it is not reasonable to assume that defendants, when they signed the agreement in New York,

anticipated that they would be subject to suit in Ohio and put to the expense of defending a litigation in that State (see *Garrett v Ruth Originals Corp.; supra,* p 383, where the court in allowing jurisdiction over an out-of-State corporate defendant distinguished the case from *Pickens v Hess,* 573 F2d 380, on the ground that in *Pickens* the defendants were a husband and his wife and not a sizeable corporation). Indeed, the Supreme Court in *Shaffer v Heitner* (433 US 186, 204, n 19) observed that: "The differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes state jurisdiction over one type of defendant but not over the other." On this ground the case at bar may be distinguished from the cases upholding jurisdiction over foreign corporate defendants (see *Capital Dredge & Dock Corp. v Midwest Dredging Co.,* 573 F2d 377; *In-Flight Devices Corp. v Van Dusen Air, supra; Southern Mach. Co. v Mohasco Inds.,* 401 F2d 374, *supra; Garrett v Ruth Originals Corp., supra; Cook Assoc. v Colonial Broach & Mach. Co.,* 14 Ill App 3d 965).

*Garrett v Ruth Originals Corp.* (456 F Supp 376, *supra)* and *Cook Assoc. v Colonial Broach & Mach. Co. (supra),* both relied upon by plaintiff, have obvious differences. In *Garrett,* as contrasted with the case at bar, the contract was made in the forum State and the defendant was a corporation doing a national business with sales of nearly $8,000,000 in 1976, including sales in Ohio of over $160,000 *(Garrett v Ruth Originals Corp., supra,* p 382). The court noted that "the defendant corporation appears to be financially capable of defending this suit, it engages in a general interstate operation with numerous and not insubstantial contacts with Ohio, and, most importantly, the defendant was the aggressive party which made the initial contact, urged the plaintiff to travel to North Carolina for negotiations, and completed the contract by contacting the plaintiff in Ohio." While it acknowledged that "the question is a close one," the court concluded that "[i]n the circumstances of this case, the Court is unable to say that the assertion of jurisdiction over this non-resident corporation is unreasonable or unfair" *(Garrett v Ruth Originals Corp., supra,* p 383). In *Cook,* the defendant was a manufacturing com-

pany, not an individual. As contrasted with the case here, the contract was accepted by plaintiff in Illinois, the forum State, and plaintiff's performance of the contract was fulfilled by furnishing information concerning the employee during the telephone call initiated by defendant to plaintiff in Illinois *(Cook Assoc. v Colonial Broach & Mach. Co., supra,* p 970).

The order should be reversed, the judgment vacated and the motion denied.

CARDAMONE, J. P., DENMAN and SCHNEPP, JJ., concur with HANCOCK, JR., J.; CALLAHAN, J., not participating.

Order and judgment reversed, on the law and facts, with costs, judgment vacated and motion denied.